# EXHIBIT E

1

```
1                UNITED STATES DISTRICT COURT
2                NORTHERN DISTRICT OF CALIFORNIA
3                      OAKLAND DIVISION
4      ---------------------------------------------------------
5      JOHN TENNISON and ANTOINE GOFF,
6
                            Petitioners,
7
          vs.                      Case Nos. C-04-0574 CW (EMC)
8                                            C-04-1643 CW (EMC)
9
       CITY and COUNTY of SAN FRANCISCO,
10     et al.,
11                          Defendants.
12     ---------------------------------------------------------
13
14                        DEPOSITION OF

15                       LOVINSKY RICARD
16
17                     Taken March 14, 2005

18                   Commencing at 9:15 a.m.
19
20                                    COPY
21
22
                   REPORTED BY:  SHEILA D. FEARING
23          PARADIGM REPORTING & CAPTIONING INC.
                        1400 RAND TOWER
24               527 MARQUETTE AVENUE SOUTH
                MINNEAPOLIS, MINNESOTA 55402
25                      (612) 339-0545
```

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

2

```
 1        Deposition of LOVINSKY RICARD, taken on the 14th
 2   day of March, 2005 commencing at 9:15 a.m. at the law
 3   firm of Halleland & Lewis, 220 South Sixth Street,
 4   Suite 600, Pillsbury Center South, Minneapolis,
 5   Minnesota, before Sheila D. Fearing, Registered
 6   Professional Reporter and Notary Public of and for the
 7   State of Minnesota.
 8
 9                  * * * * * * * * * * *
10
11                        APPEARANCES
12
     On Behalf of the John Tennison:
13
          Steven P. Ragland, Esquire
14        Keker & Van Nest, LLP
          710 Sansome Street
15        San Francisco, California 94111-1704
          415-391-5400
16
     On Behalf of the Lovinsky Ricard:
17
          Daniel C. Guerrero, Esquire
18        Meshbesher & Spence, Ltd.
          1616 Park Avenue
19        Minneapolis, Minnesota 55404
          612-339-9121
20
     On Behalf of the City and County of San Francisco:
21
          Sherri Sokeland Kaiser, Esquire
22        Deputy City Attorney
          Office of the City Attorney
23        City Hall, Room 234
          1 Dr. Carlton B. Goodlett Place
24        San Francisco, California 94102-4682
          415-554-4691
25
```

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

3

1    APPEARANCES (Continued)

2    (Via Telephone)

3

     On Behalf of Napoleon Hendrix and Earl Sanders:

4
         James A. Quadra, Esquire
5        Moscone, Emblidge & Quadra, LLP
         180 Montgomery Street
6        Suite 1240
         San Francisco, California 94104-4230
7        415-362-3599

8
     (Via Telephone)
9
     On Behalf of Antoine Goff:
10
         John Houston Scott, Esquire
11       Scott Law Firm
         153 Townsend Street
12       Suite 950
         San Francisco, California 94107
13       415-442-5100

14
15
16
17
18
19
20
21
22
23
24   Note:   The original transcript will be delivered to
     Steven P. Ragland, Esquire, pursuant to the applicable
25   Rules of Civil Procedure.

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

4

1                              I N D E X

2      WITNESS:  LOVINSKY RICARD                    PAGE:

3

4

5      EXAMINATION:

6

7      By Mr. Ragland:                                      4
8      By Mr. Scott:                                       48
9      By Mr. Quadra:                                      49
10     By Ms. Kaiser:                                      67
11
12
13     EXHIBITS MARKED:
14
15     45   Audiotape of Police Interview 11/7/90         20
16     46   Transcript of Police Interview 11/7/90        20
17     47   Jeffrey Adachi Interview with Lovinsky
            Ricard 2/20/91                                45
18
19     48   Videotape of Interview with Lovinsky
            Ricard 2/20/91                                43
20
       49   Audiotape of Interview with Lovinsky
21          Ricard 2/20/91                                44
22
       50      3/2/05 letter from Quadra to Roberts       51
23
       51      3/2/05 letter from Roberts to Quadra       52
24
       52      3/11/05 letter from Quadra to Roberts      52
25

Lovinsky Ricard  3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

5

1                      P R O C E E D I N G S

2                      VIDEOGRAPHER:  We are on the record.

3    This is the videotaped deposition of Lovinsky Ricard

4    taken on March 14, 2005.  The time now is

5    approximately 9:15 a.m.  My name is Adam Wallin.  I'm

6    the videographer representing Paradigm Reporting &

7    Captioning.  This deposition is taking place in

8    Minneapolis, Minnesota.  Will the attorneys please

9    identify themselves for the record.

10                      MR. RAGLAND:  Steven Ragland with Keker

11   & Van Nest on behalf of John Tennison.

12                      MR. GUERRERO:  My name is Dan Guerrero

13   from Ron Meshbesher's office here in Minneapolis on

14   behalf of Mr. Ricard, as well as Dennis Roberts who is

15   his counsel, who is Mr. Richard's counsel in

16   San Francisco.

17                      MS. KAISER:  My name is Sherri Sokeland

18   Kaiser.  I'm here for the City and County of

19   San Francisco.

20                      MR. QUADRA:  James Quadra, Q-u-a-d-r-a,

21   appearing on behalf of Defendants Napoleon Hendrix and

22   Earl Sanders.

23                      MR. SCOTT:  John Scott, S-c-o-t-t,

24   appearing on behalf of the Plaintiff Antoine Goff.

25                      VIDEOGRAPHER:  Will the court reporter

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

6

1    please swear in witness?

2                        LOVINSKY RICARD,

3       duly sworn, was examined and testified as follows:

4                        EXAMINATION

5    BY MR. RAGLAND:

6         Q.    Good morning, Mr. Ricard.

7         A.    Good morning.

8         Q.    Could you please state your name and spell it

9    for the record?

10        A.    Lovinsky Thomas Ricard, Jr.  L-o-v-i-n-s-k-y

11   is the first name.  T-h-o-m-a-s, Thomas is the middle

12   name.  Ricard, R-i-c-a-r-d, last name, Jr.

13        Q.    Now, Mr. Ricard in the early morning hours of

14   August 19, 1989 you shot and killed Roderick Shannon,

15   isn't that correct?

16        A.    On advice of counsel in accordance with my

17   rights under the Fifth Amendment to the United States

18   Constitution I respectfully decline to answer this

19   question and any further questions you put to me.

20        Q.    You knew that Shannon was affiliated with a

21   gang from the Sunnydale neighborhood of San Francisco,

22   correct?

23        A.    On advice of counsel in accordance with my

24   rights under the Fifth Amendment to the United States

25   Constitution I respectfully decline to answer this

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

7

1    question and any further questions you put to me.

2         Q.    You killed Shannon in retaliation for a

3    drive-by shooting by Sunnydale gang members which

4    claimed the life of your close friend Cheap Charlie,

5    correct?

6         A.    On advice of counsel and in accordance with

7    my rights under the Fifth Amendment to the United

8    States Constitution I respectfully decline to answer

9    this question and any further questions you put to me.

10        Q.    In November 1990 you were arrested by two

11   San Francisco police officers, correct?

12        A.    On advice of counsel and in accordance with

13   my rights under the Fifth Amendment to the United

14   States Constitution I respectfully decline to answer

15   this question and any further questions you put to me.

16        Q.    One of those officers, Detective Michael

17   Lewis, had previously questioned you in connection

18   with the Shannon homicide in February of 1990, isn't

19   that right?

20        A.    On advice of counsel in accordance with my

21   rights under the on advice of counsel and in

22   accordance with my rights under the Fifth Amendment to

23   the United States Constitution I respectfully decline

24   to answer this question and any further questions you

25   put to me.

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

8

1     Q.    Lewis, along with homicide inspector Napoleon

2     Hendrix, accused you in February of 1990 of being a

3     participate in the Shannon homicide, isn't that

4     correct?

5          A.    On advice of counsel and in accordance with

6     my rights under the Fifth Amendment to the United

7     States Constitution I respectfully decline to answer

8     this question and any further questions you put to me.

9          Q.    When Lewis and his partner Detective Nevil

10    Gittens interviewed in November of 1990 you confessed

11    to committing the murder of Roderick Shannon, isn't

12    that correct?

13              MR. QUADRA:   Objection.   Misstates the

14    evidence.   Assumes facts not in evidence.

15         A.    On advice of counsel and in accordance with

16    my rights under the Fifth Amendment to the United

17    States Constitution I respectfully decline to answer

18    this question and any further questions you put to me.

19    BY MR. RAGLAND:

20         Q.    You told Detectives Lewis and Gittens that

21    you participated in a car chase of Shannon through the

22    streets near Visitacion High School, isn't that right?

23         A.    On advice of counsel and in accordance with

24    my rights under the Fifth Amendment to the United

25    States Constitution I respectfully decline to answer

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

9

1    this question and any further questions you put to me.

2         Q.    You told Detectives Lewis and Gittens that

3    after the men you were with beat up Shannon, you

4    killed Shannon with a shotgun blast at close range,

5    isn't that correct?

6         A.    On advice of counsel and in accordance with

7    my rights under the Fifth Amendment to the United

8    States Constitution I respectfully decline to answer

9    this question and any further questions you put to me.

10        Q.    You told Detectives Lewis and Gittens that

11   John Tennison was not present during the chase of

12   Roderick Shannon, isn't that right?

13        A.    On advice of counsel and in accordance with

14   my rights under the Fifth Amendment to the United

15   States Constitution I respectfully decline to answer

16   this question and any further questions you put to me.

17        Q.    You told Detectives Lewis and Gittens that

18   John Tennison did not participate in any way in the

19   events leading up to the murder of Roderick Shannon,

20   isn't that correct?

21        A.    On advice of counsel and in accordance with

22   my rights under the Fifth Amendment to the United

23   States Constitution I respectfully decline to answer

24   this question and any further questions you put to me.

25        Q.    In the November of 1990 interview you gave to

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

10

1   Detective Lewis and his partner Nevil Gittens you

2   understood that anything you said to them could be

3   used against you, correct?

4       A.   On advice of counsel and in accordance with

5   my rights under the Fifth Amendment to the United

6   States Constitution I respectfully decline to answer

7   this question and any further questions you put to me.

8       Q.   When you gave your statement to Detectives

9   Lewis and Gittens you understood that you had

10  confessed to a murder, isn't that right?

11      A.   On advice of counsel and in accordance with

12  my rights under the Fifth Amendment to the United

13  States Constitution I respectfully decline to answer

14  this question and any further questions you put to me.

15      Q.   You understood that your confession could be

16  used to prosecute you for murder, isn't that right?

17      A.   On advice of counsel and in accordance with

18  my rights under the Fifth Amendment to the United

19  States Constitution I respectfully decline to answer

20  this question and any further questions you put to me.

21      Q.   You understood that the San Francisco

22  District Attorney's Office could put you in jail for

23  life for murdering Roderick Shannon, isn't that right?

24      A.   On advice of counsel and in accordance with

25  my rights under the Fifth Amendment to the United

Lovinsky Ricard  3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

11

1   States Constitution I respectfully decline to answer

2   this question and any further questions you put to me.

3       Q.   You believe that the D.A.'s office could put

4   you in jail for life when you made these statements to

5   Detectives Lewis and Gittens, correct?

6       A.   On advice of counsel and in accordance with

7   my rights under the Fifth Amendment to the United

8   States Constitution I respectfully decline to answer

9   this question and any further questions you put to me.

10      Q.   You were not forced to give any statement to

11  Detectives Lewis and Gittens, correct?

12      A.   On advice of counsel and in accordance with

13  my rights under the Fifth Amendment to the United

14  States Constitution I respectfully decline to answer

15  this question and any further questions you put to me.

16      Q.   You voluntarily confessed to the Shannon

17  homicide even though doing so could lead directly to a

18  sentence of life imprisonment, correct?

19      A.   On advice of counsel and in accordance with

20  my rights under the Fifth Amendment to the United

21  States Constitution I respectfully decline to answer

22  this question and any further questions you put to me.

23      Q.   You are refusing to answer questions here

24  today because you are afraid that the San Francisco

25  D.A.'s Office is going to prosecute you for the murder

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

12

1    of Shannon, isn't that correct?

2        A.    On advice of counsel and in accordance with

3    my rights under the Fifth Amendment to the United

4    States Constitution I respectfully decline to answer

5    this question and any further questions you put to me.

6        Q.    Mr. Ricard, can you please state your address

7    for the record?

8        A.    7752 Plum Creek Circle, North Branch,

9    Minnesota 55056.

10       Q.    And what is your date of birth?

11       A.    7/16/70.

12       Q.    Where were you born?

13       A.    San Francisco, California.

14       Q.    Where else have you lived besides

15   San Francisco?

16       A.    No where.

17       Q.    Where do you live now?

18       A.    Here, Minneapolis, Minnesota.

19       Q.    Are you the same Lovinsky Ricard who lived in

20   Hunter's Point in San Francisco in 1989?

21       A.    On advice of counsel and in accordance with

22   my rights under the Fifth Amendment to the United

23   States Constitution I respectfully decline to answer

24   this question and any further questions you put to me.

25       Q.    Were you in San Francisco on the night of

13

1    August 18 and the early morning of August 19, 1989?

2         A.    On advice of counsel and in accordance with

3    my rights under the Fifth Amendment to the United

4    States Constitution I respectfully decline to answer

5    this question and any further questions you put to me.

6         Q.    Isn't it true that you were in San Francisco

7    on the night of August 18 and the early morning of

8    August 19, 1989?

9         A.    On advice of counsel and in accordance with

10   my rights under the Fifth Amendment to the United

11   States Constitution I respectfully decline to answer

12   this question and any further questions you put to me.

13        Q.    You told the San Francisco police that you

14   were in San Francisco those days, didn't you?

15        A.    On advice of counsel and in accordance with

16   my rights under the Fifth Amendment to the United

17   States Constitution I respectfully decline to answer

18   this question and any further questions you put to me.

19        Q.    Have you ever provided a taped statement to

20   the San Francisco police?

21        A.    On advice of counsel and in accordance with

22   my rights under the Fifth Amendment to the United

23   States Constitution I respectfully decline to answer

24   this question and any further questions you put to me.

25        Q.    In fact, you gave a taped statement to the

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

14

1    San Francisco police on November 7, 1990, didn't you?

2        A.    On advice of counsel and in accordance with

3    my rights under the Fifth Amendment to the United

4    States Constitution I respectfully decline to answer

5    this question and any further questions you put to me.

6        Q.    Who was that interview with?

7        A.    On advice of counsel and in accordance with

8    my rights under the Fifth Amendment to the United

9    States Constitution I respectfully decline to answer

10   this question and any further questions you put to me.

11       Q.    Wasn't that interview with two San Francisco

12   police officers?

13       A.    On advice of counsel and in accordance with

14   my rights under the Fifth Amendment to the United

15   States Constitution I respectfully decline to answer

16   this question and any further questions you put to me.

17       Q.    One of the officers was Detective Michael

18   Lewis, correct?

19       A.    On advice of counsel and in accordance with

20   my rights under the Fifth Amendment to the United

21   States Constitution I respectfully decline to answer

22   this question and any further questions you put to me.

23       Q.    The other officer in that interview was

24   Detective Nevil Gittens, correct?

25       A.    On advice of counsel and in accordance with

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

15

1    my rights under the Fifth Amendment to the United

2    States Constitution I respectfully decline to answer

3    this question and any further questions you put to me.

4        Q.   Now, as we go through the questioning this

5    morning, Mr. Ricard, if you need a break, please feel

6    free to take one.  If you need to speak with your

7    attorney, please also feel free to do so.

8            I'm going to play a tape that's marked

9    Lovinsky Ricard 11/7/90.

10           (Cassette tape playing.)

11           LEWIS:  The time is 9:30 hours.  It is

12   November 7, 1990.  We're at 850 Bryant Street, The

13   Hall of Justice in the Gang Task Force Office.  This

14   is an interview being conducted with Lovinsky Ricard.

15           This is relative to San Francisco Incident

16   Number 891-092-371.  In attendance in this interview

17   is myself Officer Michael Lewis and Officer Nevil

18   Gittens of the Gang Task Force of the Police

19   Department.

20           Mr. Ricard, could you spell your name, your

21   full name for the tape?

22           RICARD:  L-o-v-i-n-s-k-y.

23           LEWIS:  Okay.  Your last name?

24           RICARD:  R-i-c-a-r-d.

25           (Cassette tape off.)

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

16

1   BY MR. RAGLAND:

2        Q.   Mr. Ricard, do you recognize the voices on

3   that tape?

4        A.   On advice of counsel and in accordance with

5   my rights under the Fifth Amendment to the United

6   States Constitution I respectfully decline to answer

7   this question and any further questions you put to me.

8        Q.   Isn't one of those voices yours?

9        A.   On advice of counsel and in accordance with

10  my rights under the Fifth Amendment to the United

11  States Constitution I respectfully decline to answer

12  this question and any further questions you put to me.

13       Q.   In fact, the speaker identifies himself as

14  Lovinsky Ricard, doesn't he?

15       A.   On advice of counsel and in accordance with

16  my rights under the Fifth Amendment to the United

17  States Constitution I respectfully decline to answer

18  this question and any further questions you put to me.

19       Q.   And that is your name, correct?

20       A.   On advice of counsel and in accordance with

21  my rights under the Fifth Amendment to the United

22  States Constitution I respectfully decline to answer

23  this question and any further questions you put to me.

24       Q.   And you recognize the other voice on the

25  tape?

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

17

1    A.   On advice of counsel and in accordance with

2    my rights under the Fifth Amendment to the United

3    States Constitution I respectfully decline to answer

4    this question and any further questions you put to me.

5    Q.   You recognize that other voice as the voice

6    of San Francisco Police Officer Michael Lewis,

7    correct?

8    A.   On advice of counsel and in accordance with

9    my rights under the Fifth Amendment to the United

10   States Constitution I respectfully decline to answer

11   this question and any further questions you put to me.

12   Q.   And, in fact, the speaker identifies himself

13   as Officer Michael Lewis, isn't that right?

14   A.   On advice of counsel and in accordance with

15   my rights under the Fifth Amendment to the United

16   States Constitution I respectfully decline to answer

17   this question and any further questions you put to me.

18   Q.   Was this the first time you met Officer

19   Lewis?

20   A.   On advice of counsel and in accordance with

21   my rights under the Fifth Amendment to the United

22   States Constitution I respectfully decline to answer

23   this question and any further questions you put to me.

24   Q.   Isn't it true that you had met and spoken

25   with Officer Lewis before November 7, 1990?

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

18

1    A.    On advice of counsel and in accordance with
2    my rights under the Fifth Amendment to the United
3    States Constitution I respectfully decline to answer
4    this question and any further questions you put to me.
5    Q.    In fact, you gave an interview to Officer
6    Lewis on February 8, 1990, didn't you?
7    A.    On advice of counsel and in accordance with
8    my rights under the Fifth Amendment to the United
9    States Constitution I respectfully decline to answer
10   this question and any further questions you put to me.
11   Q.    Who else was present at that February 8, 1990
12   interview?
13   A.    On advice of counsel and in accordance with
14   my rights under the Fifth Amendment to the United
15   States Constitution I respectfully decline to answer
16   this question and any further questions you put to me.
17   Q.    Was the San Francisco police inspector
18   present?
19   A.    On advice of counsel and in accordance with
20   my rights under the Fifth Amendment to the United
21   States Constitution I respectfully decline to answer
22   this question and any further questions you put to me.
23                THE WITNESS:  Can I take a break?
24                MR. RAGLAND:  Certainly.
25                VIDEOGRAPHER:  We're going off the

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

19

1    record at 9:30 a.m.

2                    (Recess taken.)

3                    VIDEOGRAPHER:   We're back on the record

4    at 9:34 a.m.

5                    MR. QUADRA:   Steven, this is Jim

6    Quadra.   If we could put our stipulation on the record

7    regarding objections which will expedite hopefully the

8    resolution or ending the deposition today if possible.

9                    MR. RAGLAND:   Yeah.   We've agreed to

10   reserve objections, form objections for whoever is

11   questioning.

12   BY MR. RAGLAND:

13        Q.   Okay.  Mr. Ricard, before the break we were

14   talking about your November 7, 1990 taped interview

15   with Officers Lewis and Gittens and I referred you to

16   a prior interview you had given with Officer Lewis in

17   February of 1990.  And I had asked was the

18   San Francisco police inspector present.  And now my

19   next question is wasn't Inspector Napoleon Hendrix

20   present at the February 8, 1990 interview?

21        A.   I invoke my rights under the Fifth Amendment.

22        Q.   Both Lewis and Hendrix conducted that

23   February 8, 1990, correct?

24        A.   I invoke my rights under the Fifth Amendment.

25                    MR. RAGLAND:   I'm going to introduce or

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

20

1    put in as a Deposition Exhibit No. 45 an audiotape of
2    the police interview with Lovinsky Ricard November 7,
3    1990 and I will also distribute to counsel and put on
4    the record the transcript of that interview as 46.
5                 MR. QUADRA:  Steven, Exhibit 46 is a
6    transcript -- this is Jim Quadra on the record --
7    created by your office, is that correct?
8                 MR. RAGLAND:  That is correct.
9                 MR. QUADRA:  So if I could just for the
10   record to preserve it have a running objection to the
11   foundation of the document because we are not assured
12   of its accuracy since it was transcribed by your
13   office and has not been stipulated to be accurate by
14   any of the other parties, nor has it been approved by
15   the court as being accurate, so I don't have a
16   problem.
17                 MR. RAGLAND:  Understood.
18                 MR. QUADRA:  You can go forward with
19   whatever you want, but I just want to keep my
20   objection.
21                 MR. RAGLAND:  Understood.
22                 MR. QUADRA:  Okay.  Thank you.
23   BY MR. RAGLAND:
24      Q.   Mr. Ricard, what happened on the night of
25   August 18 in the early morning hours of August 19,

Lovinsky Ricard  3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

21

```
 1    1989?
 2         A.    I invoke my rights under the Fifth Amendment.
 3         Q.    Did there come a time that night when you
 4    went out?
 5         A.    I invoke my rights under the Fifth Amendment.
 6         Q.    Were you hanging out with friends that night?
 7         A.    I invoke my rights under the Fifth Amendment.
 8         Q.    Who were you with that night?
 9         A.    I invoke my rights under the Fifth Amendment.
10         Q.    Isn't it true that you were with Shantay
11    Smith, Anthony Jones, whose nickname was Mark Anthony,
12    and Luther Blue that night?
13         A.    I invoke my rights under the Fifth Amendment.
14         Q.    Where was Luther Blue from?
15         A.    I invoke my rights under the Fifth Amendment.
16         Q.    Isn't it true that Luther Blue was from
17    San Francisco's neighborhood called Hunter's Point?
18         A.    I invoke my rights under the Fifth Amendment.
19         Q.    He lived on Oakdale Street, didn't he?
20         A.    I invoke my rights under the Fifth Amendment.
21         Q.    Luther Blue was a friend of yours, right?
22         A.    I invoke my rights under the Fifth Amendment.
23         Q.    Was Luther Blue involved in a gang?
24         A.    I invoke my rights under the Fifth Amendment.
25         Q.    Isn't it true that Luther Blue was involved
```

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

22

1   in the Hunter's Point gang?

2       A.    I invoke my rights under the Fifth Amendment.

3       Q.    Was there a rivalry between youths from

4   Hunter's Point and youths from any other neighborhood

5   in San Francisco in the late 1980s?

6       A.    I invoke my rights under the Fifth Amendment.

7       Q.    There was a rivalry between Hunter's Point

8   and Sunnydale at that time, wasn't there?

9       A.    I invoke my rights under the Fifth Amendment.

10      Q.    What, if anything, happened because of this

11  rivalry between youths from Hunter's Point and

12  Sunnydale?

13      A.    I invoke my rights under the Fifth Amendment.

14      Q.    This rivalry resulted in other killings,

15  didn't it?

16      A.    I invoke my rights under the Fifth Amendment.

17      Q.    Young men from Sunnydale killed young men

18  from Hunter's Point and vice-versa, didn't they?

19      A.    I invoke my rights under the Fifth Amendment.

20      Q.    Do you know anyone who was killed because of

21  this rivalry?

22      A.    I invoke my rights under the Fifth Amendment.

23      Q.    Who is Cheap Charlie?

24      A.    I invoke my rights under the Fifth Amendment.

25      Q.    In 1989 did you know someone from Hunter's

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

23

1   Point in San Francisco who went by the name Cheap
2   Charlie?
3       A.    I invoke my rights under the Fifth Amendment.
4               MS. KAISER:  Objection, Counsel.  To
5   the extent that these questions are completely
6   duplicative of each other, it really is extending the
7   length of the deposition.  If you could just ask the
8   same question perhaps in the most general form once so
9   that you cover the territory, I think that would be
10  more helpful than narrowing the question five times
11  after you ask it the first time.
12              MR. RAGLAND:  I'll go through the
13  questions I have for the record as quickly as
14  possible.
15  BY MR. RAGLAND:
16      Q.    Was Cheap Charlie killed in a drive-by
17  shooting in the summer of 1989?
18      A.    I invoke my rights under the Fifth Amendment.
19      Q.    At that time did you believe that Cheap
20  Charlie was killed by someone from Sunnydale?
21      A.    I invoke my rights under the Fifth Amendment.
22      Q.    Was it common knowledge on the streets that
23  Cheap Charlie was killed by a group of people from
24  Sunnydale?
25      A.    I invoke my rights under the Fifth Amendment.

Lovinsky Ricard  3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

24

1    Q.    What was your relationship with Cheap

2   Charlie?

3    A.    I invoke my rights under the Fifth Amendment.

4    Q.    Would you describe Cheap Charlie as a good

5   friend?

6    A.    I invoke my rights under the Fifth Amendment.

7    Q.    You told Officer Lewis and Inspector Hendrix

8   on February 8, 1990 that Cheap Charlie was a, quote,

9   good friend of yours, didn't you?

10    A.    I invoke my rights under the Fifth Amendment.

11    Q.    Did Luther Blue know Cheap Charlie?

12    A.    I invoke my rights under the Fifth Amendment.

13    Q.    Luther Blue and Cheap Charlie were cousins,

14   weren't they?

15    A.    I invoke my rights under the Fifth Amendment.

16    Q.    Now, to direct your attention back to the

17   night of August 18 and the early morning hours of

18   August 19, 1989, were you, Luther Blue, Shantay Smith

19   and Mark Anthony, where were you that night?

20    A.    I invoke my rights under the Fifth Amendment.

21    Q.    Whose car were you driving in?

22    A.    I invoke my rights under the Fifth Amendment.

23    Q.    It was Shantay Smith's car, wasn't it?

24    A.    I invoke my rights under the Fifth Amendment.

25    Q.    What kind of car was it?

Paradigm Reporting & Captioning Inc.
612-339-0545

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

25

1    A.    I invoke my rights under the Fifth Amendment.

2    Q.    It was a blue Mustang, correct?

3    A.    I invoke my rights under the Fifth Amendment.

4    Q.    A convertible?

5    A.    I invoke my rights under the Fifth Amendment.

6    Q.    Did there come a time that night you went to

7  the Third Street Liquors with Blue, Smith and Anthony?

8    A.    I invoke my rights under the Fifth Amendment.

9    Q.    Did you meet up with anyone else at the Third

10  Street Liquors?

11    A.    I invoke my rights under the Fifth Amendment.

12    Q.    Did a group of young men from Lakeview arrive

13  at Third Street Liquors while you were there that

14  night?

15    A.    I invoke my rights under the Fifth Amendment.

16    Q.    Who were these young men?

17    A.    I invoke my rights under the Fifth Amendment.

18    Q.    One was someone known as Cugnut, correct?

19    A.    I invoke my rights under the Fifth Amendment.

20    Q.    Cugnut was known as the Lakeview Rapper?

21    A.    I invoke my rights under the Fifth Amendment.

22    Q.    Another of these young men was Louie Lou?

23    A.    I invoke my rights under the Fifth Amendment.

24    Q.    There was also someone known as the Mad

25  Hatter, right?

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

26

    1        A.    I invoke my rights under the Fifth Amendment.

    2        Q.    And Chardie Dee was another of these young

    3    men?

    4        A.    I invoke my rights under the Fifth Amendment.

    5        Q.    Did the people from Lakeview say what they

    6    were planning to do that night?

    7        A.    I invoke my rights under the Fifth Amendment.

    8              MR. GUERRERO:  Counsel, can we

    9    stipulate that he would be taking his Fifth to every

   10    single question you're going to be asking from now on?

   11              MR. RAGLAND:  I need to ask the

   12    questions and have the response.  I do understand that

   13    it takes some time, but I will go through and make my

   14    record as I need to as quickly as possible.

   15              MR. GUERRERO:  Well, with the

   16    stipulation I think the record could be made, you can

   17    count the questions that you would have in there and

   18    then perhaps --

   19              THE WITNESS:  Take a break?

   20              VIDEOGRAPHER:  We're going off the

   21    record at 9:42 a.m.

   22              (Discussion had off the record.)

   23              VIDEOGRAPHER:  We're back on the record

   24    at 9:43 a.m.

   25    BY MR. RAGLAND:

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

27

1      Q.    Now, before we went off the record,
2    Mr. Ricard, I had asked you did the people from
3    Lakeview who arrived at the Third Street Liquors on
4    the night of August 18 or the early morning of August
5    19, 1989 say what they were planning to do that night?
6         A.    I invoke my rights under the Fifth Amendment.
7         Q.    They said they were going over to Sunnydale
8    to, quote, "Start some shit," didn't they?
9         A.    I invoke my rights under the Fifth Amendment.
10        Q.    When I say people from Lakeview, what does
11   that mean to you?
12        A.    I invoke my rights under the Fifth Amendment.
13        Q.    Lakeview is an area of San Francisco, isn't
14   it?
15        A.    I invoke my rights under the Fifth Amendment.
16        Q.    Where in San Francisco is the Lakeview
17   district?
18        A.    I invoke my rights under the Fifth Amendment.
19        Q.    How did the group of men from Lakeview get to
20   Third Street Liquors?
21        A.    I invoke my rights under the Fifth Amendment.
22        Q.    They drove up in several vehicles, didn't
23   they?
24        A.    I invoke my rights under the Fifth Amendment.
25        Q.    How many vehicles were they driving?

28

1    A.    I invoke my rights under the Fifth Amendment.

2    Q.    Weren't there two cars and a pickup truck?

3    A.    I invoke my rights under the Fifth Amendment.

4    Q.    And you arrived at Third Street Liquors in a

5    third car along with Luther Blue, Shantay Smith and

6    Mark Anthony, right?

7    A.    I invoke my rights under the Fifth Amendment.

8    Q.    So there were three cars and a pickup truck

9    that you and the Hunter's Point group were traveling

10   in that night, correct?

11   A.    I invoke my rights under the Fifth Amendment.

12   Q.    You told Officer Lewis and Officer Gittens in

13   the November 19 -- I'm sorry -- November 9, 1990 taped

14   interview that the group you were with that night was

15   traveling in three cars and one pickup truck, didn't

16   you?

17   A.    I invoke my rights under the Fifth Amendment.

18   Q.    Did you have anything alcoholic to drink that

19   night?

20   A.    I invoke my rights under the Fifth Amendment.

21   Q.    Isn't it true that you were drinking malt

22   liquor?

23   A.    I invoke my rights under the Fifth Amendment.

24   Q.    You told Officer Lewis and Officer Gittens in

25   the November 9, 1990 taped interview that you were

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

29

1    drink Olde English that night, didn't you?

2         A.    I invoke my rights under the Fifth Amendment.

3         Q.    Was there anything in particular on your mind

4    that night?

5         A.    I invoke my rights under the Fifth Amendment.

6         Q.    Were you thinking about Cheap Charlie?

7         A.    I invoke my rights under the Fifth Amendment.

8         Q.    Did there come a time you left the liquor

9    store that night?

10        A.    I invoke my rights under the Fifth Amendment.

11        Q.    Where did you go after the liquor store that

12   night?

13        A.    I invoke my rights under the Fifth Amendment.

14        Q.    Isn't it true that you went to a 7-11 on

15   Bayshore Boulevard that night?

16        A.    I invoke my rights under the Fifth Amendment.

17        Q.    You told Officer Lewis and Officer Gittens in

18   the November 9, 1990 taped interview you went to the

19   7-11 on Bayshore, quote, "down the street from the

20   Bayshore Motel" that night, didn't you?

21        A.    I invoke my rights under the Fifth Amendment.

22        Q.    Why did you go to the 7-11 on Bayshore that

23   night?

24        A.    I invoke my rights under the Fifth Amendment.

25        Q.    Isn't it true that you were heading towards

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

30

1    Sunnydale?

2         A.    I invoke my rights under the Fifth Amendment.

3         Q.    You told Officer Lewis and Officer Gittens in

4    the November 9, 1990 taped interview that you all

5    decided to ride through Sunnydale, didn't you?

6         A.    I invoke my rights under the Fifth Amendment.

7         Q.    Why did you decide to ride through Sunnydale

8    that night?

9         A.    I invoke my rights under the Fifth Amendment.

10        Q.    Isn't it true you did that to cause some

11   trouble?

12        A.    I invoke my rights under the Fifth Amendment.

13        Q.    How did you get to the 7-11?

14        A.    I invoke my rights under the Fifth Amendment.

15        Q.    You rode there in the back of a pickup truck

16   driven by some young men from Lakeview, correct?

17        A.    I invoke my rights under the Fifth Amendment.

18        Q.    You told Officer Lewis and Officer Gittens in

19   the November 9, 1990 taped interview that you got in

20   the back of the pickup truck and were sitting there at

21   the 7-11, didn't you?

22        A.    I invoke my rights under the Fifth Amendment.

23        Q.    Were you carrying anything with you that

24   night?

25        A.    I invoke my rights under the Fifth Amendment.

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

31

1    Q.   Did you have a gun with you that night?

2    A.   I invoke my rights under the Fifth Amendment.

3    Q.   Isn't it true you were carrying a shotgun

4    that night?

5    A.   I invoke my rights under the Fifth Amendment.

6    Q.   You told Officer Lewis and Officer Gittens in

7    your November 9, 1990 taped interview that you had a

8    shotgun with you that night, didn't you?

9    A.   I invoke my rights under the Fifth Amendment.

10   Q.   What kind of shotgun was it?

11   A.   I invoke my rights under the Fifth Amendment.

12   Q.   Wasn't it a 12-gauge shotgun?

13   A.   I invoke my rights under the Fifth Amendment.

14   Q.   You told Officer Lewis and Officer Gittens in

15   the November 9, 1990 taped interview that you were

16   carrying a 12-gauge shotgun that night, didn't you?

17   A.   I invoke my rights under the Fifth Amendment.

18   Q.   Was it common at that time to know cars

19   driven by people from certain parts of town?

20   A.   I invoke my rights under the Fifth Amendment.

21   Q.   You were often able to identify a person by

22   the car they were driving, correct?

23   A.   I invoke my rights under the Fifth Amendment.

24   Q.   And there were certain cars that were known

25   to be driven by people from Sunnydale, right?

Paradigm Reporting & Captioning Inc.
612-339-0545

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

32

1    A.    I invoke my rights under the Fifth Amendment.

2    Q.    Did there come a time that a black Skylark

3    drove past the 7-11 where you and the group of people

4    from Hunter's Point were parked?

5    A.    I invoke my rights under the Fifth Amendment.

6    Q.    Did you know who was driving that black

7    Skylark?

8    A.    I invoke my rights under the Fifth Amendment.

9    Q.    You recognized that car as belonging to

10   someone from Sunnydale, didn't you?

11   A.    I invoke my rights under the Fifth Amendment.

12   Q.    You told Officer Lewis and Officer Gittens in

13   the November 9, 1990 taped interview that when you

14   were at the 7-11 that night a car driven by someone

15   from Sunnydale came past the 7-11, didn't you?

16   A.    I invoke my rights under the Fifth Amendment.

17   Q.    What, if anything, happened after the

18   Sunnydale car drove by?

19   A.    I invoke my rights under the Fifth Amendment.

20   Q.    Did the group of people you were with start

21   chasing the Sunnydale car?

22   A.    I invoke my rights under the Fifth Amendment.

23   Q.    You told Officer Lewis and Officer Gittens in

24   the November 19, 1990 taped interview that after the

25   black car driven by someone from Sunnydale drove past

33

 1   you and the group of people started to chase that car,
 2   didn't you?
 3        A.   I invoke my rights under the Fifth Amendment.
 4        Q.   Where were you during the car chase?
 5        A.   I invoke my rights under the Fifth Amendment.
 6        Q.   Isn't it true that you were in the back of
 7   the pickup truck?
 8        A.   I invoke my rights under the Fifth Amendment.
 9        Q.   You told Officer Lewis and Officer Gittens in
10   the November 9, 1990 taped interview that you jumped
11   into the bed of the pickup truck during the chase,
12   didn't you?
13        A.   I invoke my rights under the Fifth Amendment.
14        Q.   Where did the chase go?
15        A.   I invoke my rights under the Fifth Amendment.
16        Q.   Didn't the chase of the Skylark go up
17   Bayshore and turn right on Leland?
18        A.   I invoke my rights under the Fifth Amendment.
19        Q.   Did there come a time that the Skylark and
20   the pickup truck chasing it drove in reverse?
21        A.   I invoke my rights under the Fifth Amendment.
22        Q.   You told Officer Lewis and Officer Gittens in
23   the November 9, 1990 taped interview that, quote, "The
24   driver of the Skylark, he threw it in reverse and went
25   back.   Then the driver of the truck threw it in

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

34

1   reverse and started chasing him back in reverse,"

2   didn't you?

3       A.   I invoke my rights under the Fifth Amendment.

4       Q.   Would you describe this as fancy driving?

5       A.   I invoke my rights under the Fifth Amendment.

6       Q.   Would you describe this as skillful driving?

7       A.   I invoke my rights under the Fifth Amendment.

8       Q.   After the reverse driving what happened?

9       A.   I invoke my rights under the Fifth Amendment.

10      Q.   There came a time when the Skylark driven by

11  someone from Sunnydale jumped a curb and crashed into

12  a fence, correct?

13      A.   I invoke my rights under the Fifth Amendment.

14      Q.   You told Officer Lewis and Officer Gittens in

15  the November 9, 1990 taped interview that the car,

16  quote, "ran up on the curb and then into the fence and

17  the driver jumped out"?

18      A.   I invoke my rights under the Fifth Amendment.

19      Q.   What happened after the driver from Sunnydale

20  jumped out of the car?

21      A.   I invoke my rights under the Fifth Amendment.

22      Q.   Isn't it true that the chase continued with

23  the Sunnydale person running on foot?

24      A.   I invoke my rights under the Fifth Amendment.

25      Q.   You told Officer Lewis and Officer Gittens in