Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

35

1    the November 9, 1990 taped interview that you

2    continued to chase this person, didn't you?

3         A.    I invoke my rights under the Fifth Amendment.

4         Q.    Did there come time when the chase ended?

5         A.    I invoke my rights under the Fifth Amendment.

6         Q.    A group of people caught the person from

7    Sunnydale and started to beat him up, didn't they?

8         A.    I invoke my rights under the Fifth Amendment.

9         Q.    You told Officer Lewis and Officer Gittens in

10   the November 9, 1990 taped interview that "some

11   people -- some people had already caught him.  They

12   had him in a corner and they was beating him up,"

13   didn't you?

14        A.    I invoke my rights under the Fifth Amendment.

15        Q.    Did there come a time when you learned the

16   identity of this person you were chasing?

17        A.    I invoke my rights under the Fifth Amendment.

18        Q.    You learned that he was Robert Shannon, also

19   know as Cooley, correct?

20        A.    I invoke my rights under the Fifth Amendment.

21        Q.    You told Officer Lewis and Officer Gittens in

22   the November 9, 1990 taped interview that you learned

23   he was Roderick Shannon or Cooley, didn't you?

24        A.    I invoke my rights under the Fifth Amendment.

25        Q.    Where did the chase of Roderick Shannon end?

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

36

```
 1        A.    I invoke my rights under the Fifth Amendment.
 2        Q.    Was it the SuperFair market?
 3        A.    I invoke my rights under the Fifth Amendment.
 4        Q.    Wasn't the SuperFair at the corner of Leland
 5   and Rutland?
 6        A.    I invoke my rights under the Fifth Amendment.
 7        Q.    Did there come a time when you got out of the
 8   pickup truck after the chase ended?
 9        A.    I invoke my rights under the Fifth Amendment.
10        Q.    You told Officer Lewis and Officer Gittens in
11   the November 9, 1990 taped interview that you got out
12   of the truck and walked over to where the group was
13   beating up Roderick Shannon, didn't you?
14              MR. GUERRERO:  Counsel, to the extent
15   that what he told the officers in the interview, I
16   think the tape would speak for itself.
17   BY MR. RAGLAND:
18        Q.    You can go ahead and respond, please.
19        A.    I invoke my rights under the Fifth Amendment.
20        Q.    Were you holding anything in your hand when
21   you got out of the truck?
22        A.    I invoke my rights under the Fifth Amendment.
23        Q.    Isn't it true that you were holding a loaded
24   shotgun when you got out of the truck?
25        A.    I invoke my rights under the Fifth Amendment.
```

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

37

1    Q.    You told Officer Lewis and Officer Gittens in

2    the November 9, 1990 taped interview that you got out

3    of the truck with a shotgun in hand, didn't you?

4        A.    I invoke my rights under the Fifth Amendment.

5        Q.    What happened next?

6        A.    I invoke my rights under the Fifth Amendment.

7        Q.    Did the people surrounding Roderick Shannon

8    move away?

9        A.    I invoke my rights under the Fifth Amendment.

10       Q.    You told Officer Lewis and Officer Gittens in

11   the November 9, 1990 taped interview that as you

12   approached Roderick Shannon people cleared back,

13   didn't you?

14       A.    I invoke my rights under the Fifth Amendment.

15       Q.    Was anyone saying anything as you approached

16   Roderick Shannon?

17       A.    I invoke my rights under the Fifth Amendment.

18       Q.    Isn't it true that people were shouting "do

19   it, do it"?

20       A.    I invoke my rights under the Fifth Amendment.

21       Q.    You told Officer Lewis and Officer Gittens in

22   the November 9, 1990 taped interview that as you

23   approached Roderick Shannon with a shotgun in hand

24   people were saying "do it do it," didn't you?

25       A.    I invoke my rights under the Fifth Amendment.

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

38

1    Q.    What happened next?

2    A.    I invoke my rights under the Fifth Amendment.

3    Q.    Did you shoot Roderick Shannon?

4    A.    I invoke my rights under the Fifth Amendment.

5    Q.    You did shoot Roderick Shannon, didn't you?

6    A.    I invoke my rights under the Fifth Amendment.

7    Q.    You told Officer Lewis and Officer Gittens in

8    the November 9, 1990 taped interview that you shot

9    Roderick Shannon with your shotgun, didn't you?

10   A.    I invoke my rights under the Fifth Amendment.

11   Q.    Before August 18, 1998 you knew who John

12   Tennison was, right?

13   A.    I invoke my rights under the Fifth Amendment.

14   Q.    You knew him as J.J. Tennison?

15   A.    I invoke my rights under the Fifth Amendment.

16   Q.    You could identify him by sight, correct?

17   A.    I invoke my rights under the Fifth Amendment.

18   Q.    Was John Tennison at the 7-11?

19   A.    I invoke my rights under the Fifth Amendment.

20   Q.    John Tennison was not at the 7-11, was he?

21   A.    I invoke my rights under the Fifth Amendment.

22   Q.    Did John Tennison participate in the car

23   chase of Cooley?

24   A.    I invoke my rights under the Fifth Amendment.

25   Q.    John Tennison did not participate in the car

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

39

1   chase of Cooley, did he?

2       A.   I invoke my rights under the Fifth Amendment.

3       Q.   Was John Tennison at the SuperFair market?

4       A.   I invoke my rights under the Fifth Amendment.

5       Q.   John Tennison was not at the SuperFair

6   market, was he?

7       A.   I invoke my rights under the Fifth Amendment.

8       Q.   You told Officer Lewis and Officer Gittens in

9   the November 9, 1990 taped interview that John

10  Tennison was not there that night, didn't you?

11      A.   I invoke my rights under the Fifth Amendment.

12               MR. RAGLAND:   Can we go off the record

13  for just one moment?

14               VIDEOGRAPHER:   We're going off the

15  record at 9:54 a.m.

16               (A discussion was had off the record.)

17               VIDEOGRAPHER:   We're back on the record

18  at 9:55 a.m.

19  BY MR. RAGLAND:

20      Q.   Now, Mr. Ricard, directing your attention to

21  February 1991, did there come a time that you met

22  Jeffrey Adachi?

23      A.   I invoke my rights under the Fifth Amendment.

24      Q.   Jeff Adachi was John Tennison's defense

25  attorney, correct?

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

40

1      A.    I invoke my rights under the Fifth Amendment.

2      Q.    John Tennison had already been convicted when

3   you met Jeff Adachi, right?

4      A.    I invoke my rights under the Fifth Amendment.

5      Q.    You had already confessed to the police when

6   you met Jeff Adachi, right?

7      A.    I invoke my rights under the Fifth Amendment.

8      Q.    Did you ever talk to Jeff Adachi about the

9   murder of Roderick Shannon?

10     A.    I invoke my rights under the Fifth Amendment.

11     Q.    You told Adachi that John Tennison was not

12   involved, correct?

13     A.    I invoke my rights under the Fifth Amendment.

14     Q.    You told Jeff Adachi that you knew Tennison

15   was not involved because you killed Roderick Shannon,

16   didn't you?

17     A.    I invoke my rights under the Fifth Amendment.

18     Q.    Did you ever give a statement about the

19   Shannon murder to Jeff Adachi?

20     A.    I invoke my rights under the Fifth Amendment.

21     Q.    In fact, you gave Adachi a statement on

22   videotape about the Shannon murder, didn't you?

23     A.    I invoke my rights under the Fifth Amendment.

24     Q.    Did you provide this interview to Jeff Adachi

25   on February 20, 1991?

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

41

1     A.    I invoke my rights under the Fifth Amendment.

2     Q.    I'm going to play for you, Mr. Ricard, a

3     videotape marked "Interview With Lovinsky Ricard

4     2/20/91."

5                MR. RAGLAND:  Okay.  I'm playing you

6     the tape now.

7                (Videotape playing.)

8                ADACHI:  Today's date and time is

9     approximately 11:00.  It's a quarter to 11 on February

10    20, 1991.  And my name is Jeff Adachi and I'm sitting

11    here with a gentleman.  I've asked you to come down

12    and talk to me about the circumstances of the death of

13    Roderick Shannon, a/k/a Cooley, is that right.

14                MR. RICHARD:  Right.

15                MR. ADACHI:  You're going to have to

16    keep your voice up so I'll be able to here it on the

17    tape.  Do you understand?

18                MR. RICARD:  Okay.

19                MR. ADACHI:  Okay.  Now, I asked you to

20    come down here to tell us what happened on August 19th

21    of 1989.  Do you have that date in mind?

22                MR. RICARD:  Yes.

23                MR. ADACHI:  Now, where were you in the

24    early morning hours before this incident occurred?

25                MR. RICARD:  Around the morning hours?

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

42

1              MR. ADACHI:  Well, before this incident

2    occurred with Cooley.

3              MR. RICARD:  Home in bed.

4              MR. ADACHI:  Okay.  You have to keep

5    your voice up.

6              MR. RICARD:  Home in bed.

7              (Videotape off.)

8    BY MR. RAGLAND:

9        Q.   Mr. Ricard, do you know the people on that

10   videotape?

11       A.   I invoke my rights under the Fifth Amendment.

12       Q.   Do you recognize the voice of the person in

13   the hooded sweatshirt?

14       A.   I invoke my rights under the Fifth Amendment.

15       Q.   That's you in the hooded sweatshirt, isn't

16   it?

17       A.   I invoke my rights under the Fifth Amendment.

18       Q.   Do you recognize the other voice?

19       A.   I invoke my rights under the Fifth Amendment.

20       Q.   Do you recognize that as the voice of Jeff

21   Adachi?

22       A.   I invoke my rights under the Fifth Amendment.

23       Q.   He introduced himself as Jeff Adachi, didn't

24   he?

25       A.   I invoke my rights under the Fifth Amendment.

43

```
 1                    MR. RAGLAND:  I'm going to mark the
 2     videotape as 48, Exhibit 48.  I'm going to play for
 3     you an audiotape marked Lovinsky Ricard 2/20/91.
 4                    (Cassette tape playing.)
 5                    MR. ADACHI:  Today's date and time is
 6     approximately 11:00.  It's quarter to 11 on February
 7     20, 1991.  And my name is Jeff Adachi and I'm sitting
 8     here with a gentleman.  I've asked you to come down
 9     and talk to me about the circumstances of the death of
10     Roderick Shannon a/k/a Cooley, is that right?
11                    MR. RICARD:  Right.
12                    MR. ADACHI:  You're going to have to
13     keep your voice up so I'll be able to hear it on the
14     tape.  Do you understand?
15                    MR. RICARD:  Okay.
16                    MR. ADACHI:  Now, I asked you to come
17     down here to tell us what happened on August 19th of
18     1989.  Do you have that date in mind?  .
19                    MR. RICARD:  Yes.
20                    MR. ADACHI:  Now, where were you in the
21     early morning hours before this incident occurred?
22                    MR. RICARD:  Around the morning hours?
23                    MR. ADACHI:  Well, before this incident
24     occurred with Cooley.
25                    MR. RICARD:  Home in bed.
```

44

1              MR. ADACHI:  Okay.  You have to keep

2    your voice up.

3              MR. RICARD:  Home in bed.

4              (Cassette tape off.)

5    BY MR. RAGLAND:

6        Q.   Do you recognize the voices on that

7    videotape?

8        A.   I invoke my rights under the Fifth Amendment.

9        Q.   In fact, that audiotape is the same interview

10   as the videotaped one I showed you previously, isn't

11   it?

12       A.   I invoke my rights under the Fifth Amendment.

13       Q.   Do you recognize one of the voices on the

14   audiotape as Jeff Adachi?

15       A.   I invoke my rights under the Fifth Amendment.

16       Q.   Do you recognize the other voice as yours?

17       A.   I invoke my rights under the Fifth Amendment.

18              MR. RAGLAND:  I'm going to mark the

19   audiotape as 48 -- 49.

20              (Exhibit 49 marked.)

21              MR. QUADRA:  Steven, was the video 48?

22   I'm sorry, I'm confused.

23              MR. RAGLAND:  The video was 48 and the

24   audio was 49.

25              MR. QUADRA:  Okay.

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

45

1            MR. RAGLAND:  The transcript was 47.

2            MR. QUADRA:  Got it.  Thank you.

3    BY MR. RAGLAND:

4        Q.   Why did you give this interview to Jeff

5    Adachi?

6        A.   I invoke my rights under the Fifth Amendment.

7        Q.   You told Adachi that you came -- you told

8    Adachi that you came forward because, quote, "the

9    person they got wasn't even there.  Didn't have

10   nothing to do with it," didn't you?

11       A.   I invoke my rights under the Fifth Amendment.

12       Q.   You told Adachi that John Tennison was not at

13   the scene of the Shannon murder, didn't you?

14       A.   I invoke my rights under the Fifth Amendment.

15       Q.   Did you tell Adachi that no yellow car was

16   involved in the chase and murder of Shannon?

17       A.   I invoke my rights under the Fifth Amendment.

18       Q.   Did you tell Adachi that you did not come

19   forward to murdering Shannon earlier because you were

20   looking out for yourself?

21       A.   I invoke my rights under the Fifth Amendment.

22       Q.   You told Adachi that you would only give this

23   statement if your identity was concealed, correct?

24       A.   I invoke my rights under the Fifth Amendment.

25       Q.   And this is because you knew that confessing

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

46

1   to murder could send you to prison and could even get
2   you the death penalty, right?
3       A.   I invoke my rights under the Fifth Amendment.
4       Q.   And you were afraid for yourself, right?
5       A.   I invoke my rights under the Fifth Amendment.
6       Q.   You never told Jeff Adachi about your
7   November 7, 1990 interview with Officers Lewis and
8   Gittens, did you?
9       A.   I invoke my rights under the Fifth Amendment.
10      Q.   You never told Jeff Adachi about your
11  confession to Officers Lewis and Gittens, did you?
12      A.   I invoke my rights under the Fifth Amendment.
13      Q.   In fact, you didn't know that your November
14  7, 1990 interview with Lewis and Gittens was taped,
15  did you?
16      A.   I invoke my rights under the Fifth Amendment.
17      Q.   Did there come a time when you moved away
18  from San Francisco?
19      A.   I invoke my rights under the Fifth Amendment.
20      Q.   How much money did Inspector Hendrix give you
21  to leave town?
22      A.   I invoke my rights under the Fifth Amendment.
23      Q.   How much money did Inspector Sanders give you
24  to leave town?
25      A.   I invoke my rights under the Fifth Amendment.

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

47

1       Q.    Did anyone from the San Francisco Police

2   Department give you money to get out of town?

3       A.    I invoke my rights under the Fifth Amendment.

4       Q.    Did you move here to Minnesota to start a new

5   life?

6       A.    I invoke my rights under the Fifth Amendment.

7       Q.    You don't want go to jail now for a crime you

8   committed in 1989, do you?

9       A.    I invoke my rights under the Fifth Amendment.

10      Q.    You hired an attorney to protect you from

11  charges that could arise from your murder of Cooley,

12  correct?

13      A.    I invoke my rights under the Fifth Amendment.

14      Q.    You hired an attorney to protect you from

15  your confession, right?

16      A.    I invoke my rights under the Fifth Amendment.

17              MR. RAGLAND:  Thank you, Mr. Ricard.  I

18  don't have anything further.

19              MR. QUADRA:  I do have questions.  I

20  don't know if Mr. Scott does.  John?

21              MR. SCOTT:  Yeah, I do have a couple.

22              MR. RAGLAND:  We're still on the

23  record.

24              MR. SCOTT:  What order?

25              MR. QUADRA:  You can go first.  Makes

48

1    sense.

2                        EXAMINATION

3    BY MR. SCOTT:

4        Q.   Mr. Ricard, my name is John Scott.   I

5    represent Antoine Goff.

6                    MR. RAGLAND:   Mr. Scott, if you could

7    speak up a bit.   You're fading a bit.

8    BY MR. SCOTT:

9        Q.   All right.   Mr. Ricard, my name is John

10   Scott.   I represent Antoine Goff.   Do you know Antoine

11   Goff?

12       A.   I invoke my rights under the Fifth Amendment.

13       Q.   Did you know Antoine Goff by the name of Soda

14   Pop?

15       A.   I invoke my rights under the Fifth Amendment.

16                   THE WITNESS:   Can we take a break here?

17                   MR. RAGLAND:   Yeah.   We'll go off the

18   record for a moment.

19                   VIDEOGRAPHER:   We're going off the

20   record at 10:07 a.m.

21                   (A discussion was had off the record.)

22                   VIDEOGRAPHER:   We're back on the record

23   at 10:07 a.m.

24   BY MR. SCOTT:

25       Q.   Mr. Ricard, did you have any contact with

Lovinsky Ricard  3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

49

1    Antoine Goff during the evening of August 18 of 1989?

2         A.    I invoke my rights under the Fifth Amendment.

3         Q.    And did you have any contacts with Antoine

4    Goff during the early morning hours of August 19,

5    1989?

6         A.    I invoke my rights under the Fifth Amendment.

7         Q.    Isn't it true that Antoine Goff was not with

8    you at the time you shot and killed Roderick Shannon?

9         A.    I invoke my rights under the Fifth Amendment.

10        Q.    Now, if I asked you the questions -- the same

11   questions that I asked -- that were asked to you by

12   Mr. Ragland, the attorney for Mr. Tennison, would your

13   answers be the same?

14        A.    I invoke my rights under the Fifth Amendment.

15                  MR. SCOTT:   That's all the questions I

16   have.

17                  MR. QUADRA:   Sherri, would you mind if

18   I go first?

19                  MS. KAISER:   Go ahead, Jim.

20                  MR. RAGLAND:   And, of course, as we

21   agreed before, objections are reserved both to form

22   and to others.

23                  MR. QUADRA:   That's correct.

24                  EXAMINATION

25   BY MR. QUADRA:

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

50

1    Q.    For the record, this is James Quadra on

2    behalf of Defendants Hendrix and Sanders.

3    Unfortunately I will have to ask you a series of

4    questions, Mr. Ricard, simply to establish the record

5    given the questions that were asked by Mr. Ragland,

6    but I will try to get through them quickly and I don't

7    think it will take as long as he did, so if we could

8    get started.

9         If you could state for the record, please,

10   what your date of birth was -- is.

11        A.    7/16/70.

12        Q.    And what is your Social Security number?

13        A.    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.

14        Q.    How long have you lived in Minnesota?

15        A.    I invoke my rights under the Fifth Amendment.

16        Q.    Have you ever been convicted of a felony?

17        A.    I invoke my rights under the Fifth Amendment.

18        Q.    How long did you live in San Francisco?

19        A.    I invoke my rights under the Fifth Amendment.

20        Q.    Have you ever met Mr. Tennison?

21        A.    I invoke my rights under the Fifth Amendment.

22        Q.    Have you ever met Mr. Goff?

23        A.    I invoke my rights under the Fifth Amendment.

24        Q.    Since moving to Minnesota have you ever

25   talked to anybody claiming to act on behalf of

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

51

1    Mr. Tennison and Mr. Goff?

2        A.    I invoke my rights under the Fifth Amendment.

3                    MR. QUADRA:  You know, at this time,

4    Sherri, do you have those letters between my office

5    and Mr. Roberts' office?

6                    MS. KAISER:  I do, Jim.

7                    MR. QUADRA:  Okay.  If we could

8    attach -- for the record, there are three letters.

9    Two are from my office to Mr. Roberts' office who has

10   represented to me he is an attorney for Mr. Ricard and

11   one of them is a letter from Mr. Roberts to my office.

12                   MS. KAISER:  Why don't we just do them

13   one at a time for clarity?

14                   MR. QUADRA:  Okay.  That's fine.

15                   MS. KAISER:  How about chronological

16   order starting --

17                   MR. QUADRA:  That would be fine.

18                   MS. KAISER:  -- with your March 2nd

19   said letter.

20                   MR. QUADRA:  That would be fine.

21                   MS. KAISER:  This would be Exhibit 50.

22                   (Exhibit 50 marked.)

23                   MR. QUADRA:  And I believe that's dated

24   March 2, 2005?

25                   MS. KAISER:  Yes.

Lovinsky Ricard  3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

52

 1              MR. QUADRA:  And it's a letter from my

 2    office to Mr. Roberts' office.

 3              Marking the next exhibit would be

 4    Exhibit 51.

 5              (Exhibit 51 marked.)

 6              MR. SCOTT:  Just for the record, I'm

 7    objecting to this as hearsay.

 8              MR. QUADRA:  That's fine.  Your

 9    objections are preserved.

10              MR. SCOTT:  Thank you.

11              MR. QUADRA:  The next letter is dated

12    March 2.  It's a letter from Mr. Roberts to me.

13              And then the final exhibit would be a

14    letter from my office to Mr. Roberts and the date of

15    that is March 11, I believe.  Is that correct?

16              MS. KAISER:  Yes, that's correct.

17              (Exhibit 52 marked.)

18              MR. QUADRA:  And for the record, these

19    letters establish that our position is that a blanket

20    assertion --

21              MR. RAGLAND:  I think the letters speak

22    for themselves.

23              MR. QUADRA:  Your objections are

24    preserved.

25              For the record, the letters establish

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

53

1  that our position is that a blanket assertion of the

2  Fifth Amendment is inappropriate and that the proper

3  assertion is one in which the declarant, in this case

4  Mr. Ricard, is confronted with a substantial and real

5  hazardous incrimination and not something trifling or

6  imaginary or nonexistent.  And in this case a simple

7  question is if somebody contacted Mr. Ricard on behalf

8  of Mr. Tennison and Goff clearly is not something that

9  puts him at risk for incrimination.  I understand your

10 position, Counsel.  I'm not going to argue with you on

11 the record.  I just want to state my position for the

12 record and we'll move on.

13              Having heard that, though,

14 Mr. Guerrero, would you instruct your client to

15 respond to any other questions that have been asked to

16 date so far?

17              MR. GUERRERO:  No, I would not.

18              MR. QUADRA:  Okay.  So we will move on

19 and we'll preserve our rights to go forward and seek

20 court assistance on this matter, but for the record

21 I'll establish my questions.

22 BY MR. QUADRA:

23    Q.   Have you signed -- Mr. Ricard, back to you.

24 Have you signed any statements for anybody claiming to

25 act on behalf of Mr. Tennison or Goff since you moved

Lovinsky Ricard  3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

                                                                    54
1    to Minnesota?

2         A.    I invoke my rights under the Fifth Amendment.

3         Q.    Are you aware whether your attorneys have

4    spoken to anybody claiming to act on behalf of

5    Mr. Tennison or Goff?

6         A.    I invoke my rights under the Fifth Amendment.

7         Q.    How did you find your attorney Dennis

8    Roberts?

9         A.    I invoke my rights under the Fifth Amendment.

10        Q.    Who referred you to him?

11        A.    I invoke my rights under the Fifth Amendment.

12        Q.    How did you come to meet Mr. Guerrero?

13        A.    I invoke my rights under the Fifth Amendment.

14        Q.    When did you retain Mr. Roberts?

15        A.    I invoke my rights under the Fifth Amendment.

16        Q.    When did you retain Mr. Guerrero?

17        A.    I invoke my rights under the Fifth Amendment.

18        Q.    Do you know if Mr. Dennis Roberts has any

19   connection to Mr. Tennison or Mr. Goff's counsel?

20        A.    I invoke my rights under the Fifth Amendment.

21        Q.    When were you served with a subpoena for this

22   deposition?

23        A.    I invoke my rights under the Fifth Amendment.

24        Q.    How were you served?

25        A.    I invoke my rights under the Fifth Amendment.

Lovinsky Ricard  3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

55

1        Q.    Where were you served with such a subpoena?

2        A.    I invoke my rights under the Fifth Amendment.

3        Q.    In 2003 did you talk to San Francisco Police

4    Department Inspectors Holly Pera and Joseph Toomey?

5        A.    I invoke my rights under the Fifth Amendment.

6        Q.    Did you speak to those inspectors at your

7    home in Minnesota?

8        A.    I invoke my rights under the Fifth Amendment.

9        Q.    Were you and the inspectors the only adults

10   present during the conversation?

11       A.    I invoke my rights under the Fifth Amendment.

12       Q.    During that conversation with Inspector Pera

13   and Toomey did you tell them that you had not murdered

14   Roderick Shannon?

15       A.    I invoke my rights under the Fifth Amendment.

16       Q.    During that conversation with Inspector Pera

17   and Toomey did you tell them that in 1990 you had

18   falsely confessed to the police to murdering Roderick

19   Shannon?

20       A.    I invoke my rights under the Fifth Amendment.

21       Q.    Did you tell the inspectors during that

22   meeting that someone asked you to falsely confess to

23   murdering Roderick Shannon?

24       A.    I invoke my rights under the Fifth Amendment.

25       Q.    Did you tell the inspectors that you believe

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

56

1   that the person that asked you to falsely confess to

2   that murder was John Tennison's brother?

3       A.    I invoke my rights under the Fifth Amendment.

4       Q.    Did you tell the inspectors that you

5   confessed because you did not think would you get in

6   trouble for the confession?

7       A.    I invoke my rights under the Fifth Amendment.

8       Q.    Did you tell the inspectors that you were

9   interviewed by Inspector Hendrix of the San Francisco

10  Police Department in 1990?

11      A.    I invoke my rights under the Fifth Amendment.

12      Q.    Did you tell the inspectors, Toomey and Pera,

13  that you had, in fact, told Inspector Hendrix during

14  the 1990 interview that you did not kill Roderick

15  Shannon?

16      A.    I invoke my rights under the Fifth Amendment.

17      Q.    Did you tell the inspectors, Toomey and Pera,

18  that you told Hendrix the truth when you were

19  interviewed in 1990 by Inspector Hendrix?

20      A.    I invoke my rights under the Fifth Amendment.

21      Q.    Did you tell Inspectors Toomey and Pera that

22  you were telling the truth when you told Inspector

23  Hendrix during that 1990 interview that you did not

24  kill Roderick Shannon?

25      A.    I invoke my rights under the Fifth Amendment.

57

1    Q.    Did you tell Inspectors Toomey and Pera that
2    you were scared?
3    A.    I invoke my rights under the Fifth Amendment.
4    Q.    Did you tell the inspectors, Toomey and Pera,
5    that Tennison's family members took you to see
6    Assistant Public Defender Jeff Adachi in 1990?
7    A.    I invoke my rights --
8    Q.    I'm sorry.  '91.  Go ahead.
9    A.    I invoke my rights under the Fifth Amendment.
10   Q.    Did you tell Inspectors Toomey and Pera in
11   that 2003 interview that Jeff Adachi told you that you
12   would not get in trouble if you confessed to the
13   murder of Roderick Shannon?
14   A.    I invoke my rights under the Fifth Amendment.
15   Q.    Did you tell Inspectors Toomey and Pera that
16   you lied when you confessed to murdering Shannon --
17   when you confessed to murdering Shannon and that
18   confession was videotaped with your identity
19   concealed?
20   A.    I invoke my rights under the Fifth Amendment.
21   Q.    Did you tell Inspectors Toomey and Pera that
22   Shantay Smith was a girlfriend of Antoine Goff at the
23   time of Shannon's murder?
24   A.    I invoke my rights under the Fifth Amendment.
25   Q.    Did you tell Inspectors Toomey and Pera that

Lovinsky Ricard  3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

58

```
 1   Shantay Smith was also dating Luther Blue at the same
 2   time she was dating Antoine Goff?
 3        A.    I invoke my rights under the Fifth Amendment.
 4        Q.    Did you tell Inspectors Toomey and Pera that
 5   you were told you never told Shantay Smith that you
 6   murdered Shannon?
 7        A.    I invoke my rights under the Fifth Amendment.
 8        Q.    Did you tell Inspectors Toomey and Pera that
 9   you never told Luther Blue that you murdered Roderick
10   Shannon?
11        A.    I invoke my rights under the Fifth Amendment.
12        Q.    Did you speak again to Inspectors Toomey and
13   Pera in 2005?
14        A.    I invoke my rights under the Fifth Amendment.
15        Q.    Did you speak to Inspectors Toomey and Pera
16   at your home in Minnesota in 2005?
17        A.    I invoke my rights under the Fifth Amendment.
18        Q.    Did you review a proposed declaration that
19   they had asked you to sign at that time?
20        A.    I invoke my rights under the Fifth Amendment.
21                  MR. RAGLAND:   Jim, obviously we'll want
22   -- we'll want that declaration if such a one exists.
23   BY MR. QUADRA:
24        Q.    Did the declaration set forth that you did
25   not murder Roderick Shannon?
```

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

59

1          A.    I invoke my rights under the Fifth Amendment.

2          Q.    Did the declaration state that you falsely

3    confessed to the police to murdering Shannon to help

4    your friends Tennison and Goff?

5                     MR. RAGLAND:  Mr. Ricard would like a

6    break right now he's indicated.

7                     THE WITNESS:  Just really quick for a

8    second.

9                     MS. KAISER:  We're not going off the

10   record unless we're taking a break.

11                    THE WITNESS:  No, it's not -- I mean, I

12   don't know who's talking to who.  I'm hearing him

13   speak, but I don't know if he's talking to him or

14   asking me a question.

15                    MS. KAISER:  You're certainly -- yeah,

16   you should ask for clarification if you have any

17   questions at all, but we don't have to go off the

18   record for that.

19                    THE WITNESS:  Okay.  I don't know.  I

20   don't know.

21                    MS. KAISER:  That's fine.  So, Jim, I

22   think that there's some unclarity about whether or not

23   you're asking Mr. Ricard a question or whether you're

24   speaking to Mr. Ragland.

25                    MR. QUADRA:  Yeah, I'm not speaking to

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

60

1    Mr. Ragland.  I'm asking questions of Mr. Ricard.

2                    MR. RAGLAND:  All right.  And I did

3    interject once because I had --

4                    THE WITNESS:  That's what I'm saying.

5    I didn't know if you were still between each other.  I

6    didn't know.

7                    MS. KAISER:  Please do ask if you have

8    any questions and feel free to interject whenever you

9    need to.

10                   THE WITNESS:  That's what I did.  I

11   figured I had to go off the record.

12   BY MR. QUADRA:

13       Q.   I apologize, Mr. Ricard.  I know it's hard to

14   do this over the phone.  I appreciate your patience.

15       A.   All right.

16       Q.   Are we ready to go forward?

17       A.   Yes.

18       Q.   I'll go back and ask you the last question.

19   Did the declaration that Inspectors Toomey and Pera

20   put forth set forth that you did not murder Roderick

21   Shannon?

22       A.   I invoke my rights under the Fifth Amendment.

23       Q.   Did the declaration state that you have

24   falsely confessed to the police to murdering Shannon

25   to help your friends Tennison and Goff?

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

61

1      A.    I invoke my rights under the Fifth Amendment.

2      Q.    Did the declaration state that you had

3  falsely confessed because you did not think you would

4  get in trouble for that confession?

5      A.    I invoke my rights under the Fifth Amendment.

6      Q.    Did the declaration state that you had

7  falsely confessed on video covering your face because

8  Jeff Adachi told you you would not get in trouble for

9  doing so?

10     A.    I invoke my rights under the Fifth Amendment.

11     Q.    Did you tell Pera and Toomey that the

12  declaration accurately stated the facts as you knew

13  them?

14     A.    I invoke my rights under the Fifth Amendment.

15     Q.    Did you sign the declaration?

16     A.    I invoke my rights under the Fifth Amendment.

17     Q.    Did you refuse to sign the declaration

18  because you said you wanted to consult with your

19  attorney and the attorney you had retained to

20  represent you for this deposition?

21     A.    I invoke my rights under the Fifth Amendment.

22     Q.    During the conversation with Inspectors Pera

23  and Toomey did you tell them that in 1990 you had

24  falsely confessed to murdering Roderick Shannon?

25     A.    I invoke my rights under the Fifth Amendment.

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

62

1    Q.    During that conversation in 2005 with

2    Inspectors Pera and Toomey did you tell them that

3    everything you had told them back in 2003 was true?

4    A.    I invoke my rights under the Fifth Amendment.

5    Q.    During the conversations with Inspector --

6    with the conversation with Inspector Pera and Toomey

7    in 2005 did you tell them that you had not murdered

8    Roderick Shannon?

9    A.    I invoke my rights under the Fifth Amendment.

10   Q.    Do you recall speaking to Inspector Napoleon

11   Hendrix of the San Francisco Police Department

12   regarding the murder of Roderick Shannon in 1990?

13   A.    I invoke my rights under the Fifth Amendment.

14   Q.    Did you tell Inspector Hendrix in that 1990

15   interview that you did not murder Roderick Shannon?

16   A.    I invoke my rights under the Fifth Amendment.

17   Q.    Did you tell Inspector Hendrix during that

18   interview in 1990 that you were not present at the

19   scene when Roderick Shannon was murdered?

20   A.    I invoke my rights under the Fifth Amendment.

21   Q.    Did you falsely confess to the murder of

22   Roderick Shannon to Officers Lewis and Gittens in

23   November of 1990?

24   A.    I invoke my rights under the Fifth Amendment.

25   Q.    How many times have you falsely confessed to

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

63

1    the murder of Roderick Shannon?

2         A.    I invoke my rights under the Fifth Amendment.

3         Q.    Before you supplied your false confession to

4    the police did you discuss the Tennison/Goff trial

5    with anybody?

6         A.    I invoke my rights under the Fifth Amendment.

7         Q.    Were you provided prior to confessing falsely

8    to the Roderick Shannon murder with any facts

9    regarding the Tennison/Goff murder trial by anybody

10   involved with Mr. Tennison or Mr. Goff?

11        A.    I invoke my rights under the Fifth Amendment.

12                    MR. RAGLAND:    And I know we reserved

13   objections, but I just want to get on the record that,

14   counsel, your view or the way you're characterizing

15   your questions is throwing in your own view of them

16   rather than possible facts.    When you say falsely,

17   that's a qualitative value judgment that you're

18   imposing on the question.

19                    MR. QUADRA:    I understand your

20   objection.    I think the same could be said for your

21   questions, so they're preserved on both ends.

22   BY MR. QUADRA:

23        Q.    Were you ever asked to falsely confess to the

24   murder of Roderick Shannon?

25        A.    I invoke my rights under the Fifth Amendment.

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

64

1    Q.   Did you think you would get in trouble

2   because of the confession?

3    A.   I invoke my rights under the Fifth Amendment.

4    Q.   Who asked you to confess?

5    A.   I invoke my rights under the Fifth Amendment.

6    Q.   When were you asked to make the confession?

7    A.   I invoke my rights under the Fifth Amendment.

8    Q.   Was anybody else present other than Mr. --

9   strike that.

10        Why did you supply a false confession?

11    A.   I invoke my rights under the Fifth Amendment.

12    Q.   What did Mr. Adachi tell you that convinced

13   you to be videotaped confessing to the Roderick

14   Shannon murder?

15    A.   I invoke my rights under the Fifth Amendment.

16    Q.   Who arranged for the videotaping of that

17   confession?

18    A.   I invoke my rights under the Fifth Amendment.

19    Q.   Who was present when you were videotaped?

20    A.   I invoke my rights under the Fifth Amendment.

21    Q.   When did the videotape occur?

22    A.   I invoke my rights under the Fifth Amendment.

23    Q.   Did anybody -- did Mr. Tennison's brother

24   know that you were going to be videotaped?

25    A.   I invoke my rights under the Fifth Amendment.

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

65

1  Q. Did Mr. Tennison's brother ever approach you

2 and ask you to please confess to help his brother?

3  A. I invoke my rights under the Fifth Amendment.

4  Q. Did you tell Mr. Adachi at the time that he

5 videotaped you that you were represented by the Public

6 Defender's Office on another matter?

7  A. I invoke my rights under the Fifth Amendment.

8  Q. Isn't it true that you are invoking the Fifth

9 Amendment and refusing to answer these questions not

10 because you killed Roderick Shannon, but to assist

11 your friends Tennison and Goff by creating doubt about

12 their guilt?

13  A. I invoke my rights under the Fifth Amendment.

14  Q. Isn't it fair to say you will not answer any

15 questions regarding any meeting with San Francisco

16 Police Department officers from 1989 to the present

17 regarding the Roderick Shannon murder trial and that

18 you will invoke the Fifth Amendment as to all of those

19 questions?

20  A. I invoke my rights under the Fifth Amendment.

21  Q. Is it fair to say you will not respond to any

22 questions regarding the trial of Tennison and Goff?

23  A. I invoke my rights under the Fifth Amendment.

24  Q. Is it fair to say you will not answer any

25 questions regarding any contacts you may have had with

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

66

1   Mr. Tennison and Goff since their trial?

2        A.   I invoke my rights under the Fifth Amendment.

3        Q.   Is it fair to say you will not answer any

4   questions regarding any contacts you may have had with

5   anybody representing or acting on behalf of

6   Mr. Tennison and Goff?

7        A.   I invoke my rights under the Fifth Amendment.

8               MR. QUADRA:  Mr. Guerrero, can we --

9   obviously I don't want to keep going at this point.  I

10  think I just want to lay a foundation.  As we stated

11  in our correspondence we will be seeking court

12  assistance in resolving this issue of whether your

13  client's position about invoking the Fifth Amendment

14  as to all of these questions is appropriate.  So if we

15  could have a stipulation that the entire area

16  regarding Roderick Shannon's murder is covered, that

17  he will be invoking the Fifth Amendment as to all

18  those questions, then we can stop this and move

19  forward to see what we can do in court.

20               MR. GUERRERO:  We will so stipulate.

21               MR. QUADRA:  So at this point I would

22  say I would adjourn -- at least on my behalf, adjourn

23  the deposition and we will be seeking court assistance

24  to try to resolve this issue.  Our position is as we

25  have stated in that correspondence that the invoking

67

1   of the Fifth Amendment is inappropriate.   Thank you.

2              MS. KAISER:   I have a few questions,

3   but only if you --

4                        EXAMINATION

5   BY MS. KAISER:

6      Q.   Earlier on when Mr. Ragland was asking you

7   questions he asked to go off the record to assure you

8   that he wouldn't ask very many more questions and to

9   let you know that he appreciated your patience and

10  that we were here today to help John.  Is that why

11  you're here today to help John --

12             MR. RAGLAND:   I'll object to that

13  because I went off the record to get something to

14  drink and I just said that before we went back on.

15             MS. KAISER:   That's actually untrue.

16  There was no drinking involved.  You stopped to assure

17  the defendant that we would be done soon.

18             MR. RAGLAND:   I stopped to have a sip

19  of water and then I made the assurance.  And I had no

20  problem having that on the record because I do

21  appreciate everyone's patience here, including counsel

22  for the defendants, including Mr. Guerrero, including

23  Mr. Ricard, and I do understand that the process takes

24  some time.

25             MS. KAISER:   We all agree that the

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

68

1    process takes time. And I simply want it on the
2    record that you assured him that we were here today to
3    help John and that you appreciated his patience and
4    this is what you needed to do today to help John.
5                    MR. RAGLAND:  That actually
6    mischaracterizes I believe what I said.
7                    MS. KAISER:  Well, you took us off the
8    record.
9                    MR. RAGLAND:  Well, I will say that I
10   said that I did appreciate Mr. Ricard's patience, your
11   patience, Counselor, Mr. Guerrero's --
12                   MS. KAISER:  You did not say that at
13   that point.
14                   MR. RAGLAND:  Well, I appreciate
15   everyone's patience. I said I appreciate yours. I
16   believe I was using it collectively. I also said that
17   I'm just making my record, as I assured Mr. Guerrero
18   also, that I had to go through these questions and
19   just making this record because this is what we have
20   to do for John, for our client. I did say that. I
21   think my exact words were this is what we have to do
22   for John. I would say that to whoever was -- everyone
23   here because I do understand that, you know, you flew
24   out from San Francisco. This is something that we all
25   did. And I was just saying that we're making the

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

69

1   record we need to make.

2   BY MS. KAISER:

3       Q.   Mr. Ricard, do you remember a few moments ago

4   Mr. Ragland saying to you while he was questioning

5   you, not during this exchange, that he appreciated

6   your patience and that this was something that we had

7   to go through to help John?  Do you remember him

8   saying that?

9       A.   I invoke my rights under the Fifth Amendment.

10      Q.   Are you here today to help John Tennison?

11      A.   I invoke my rights under the Fifth Amendment.

12      Q.   Are you taking the Fifth Amendment to help

13  create doubt that John Tennison and Antoine Goff

14  killed Shannon?

15      A.   I invoke my rights under the Fifth Amendment.

16      Q.   Are you here today taking the Fifth Amendment

17  because you're frightened of John Tennison?

18      A.   I invoke my rights under the Fifth Amendment.

19      Q.   Are you frightened of John Tennison's friends

20  or family or acquaintances?

21      A.   I invoke my rights under the Fifth Amendment.

22      Q.   Are you frightened of Antoine Goff or his

23  friends, family or acquaintances?

24      A.   I invoke my rights under the Fifth Amendment.

25      Q.   Are you concerned that you might face serious

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

70

 1  consequences if you state on the record that you did

 2  not kill Roderick Shannon?

 3      A.   I invoke my rights under the Fifth Amendment.

 4              MS. KAISER:   Those are my questions.   I

 5  join in the questions of Mr. Quadra and his

 6  objections.

 7              From the City's perspective, I agree

 8  that this deposition is not concluded, although I

 9  don't object to adjourning it so that we can seek

10  assistance from the courts.

11              MR. RAGLAND:   That's fine.   I have

12  nothing further at this time.

13              MR. GUERRERO:   Nothing further.

14              THE WITNESS:   Is that it?

15              VIDEOGRAPHER:   We're going off the

16  record at 10:30 a.m.

17              (Deposition recessed at 10:30 a.m.)

18

19

20

21

22

23

24

25

Lovinsky Ricard 3/14/2005
Tennison and Goff v. City and County of San Francisco, et al.

71

1    REPORTER'S CERTIFICATE.
2
3    STATE OF MINNESOTA )
                        ) ss.
4    COUNTY OF HENNEPIN )
5        I hereby certify that I reported the deposition of
     LOVINSKY RICARD, on the 14th day of March, 2005, in
6    Minneapolis, Minnesota, and that the witness was by me
     first duly sworn to tell the whole truth;
7
         That the testimony was transcribed by me and is a
8    true record of the testimony of the witness;
9        That the cost of the original has been charged to
     the party who noticed the deposition, and that all
10   parties who ordered copies have been charged at the
     same rate for such copies;
11
         That I am not a relative or employee or attorney
12   or counsel of any of the parties, or a relative or
     employee of such attorney or counsel;
13
         That I am not financially interested in the action
14   and have no contract with the parties, attorneys, or
     persons with an interest in the action that affects or
15   has a substantial tendency to affect my impartiality;
16       That the right to read and sign the deposition by
     the witness was waived.
17
         WITNESS MY HAND AND SEAL THIS 18th day of March,
18   2005.
19
20
     _____
21   Sheila D. Fearing
     Notary Public, Hennepin County, Minnesota
22   My commission expires January 31, 2005
23
24
25